Thank you, Your Honor and Your Honors. May it please the Court. My name is Peter Hosharian, and I'll be presenting oral arguments on behalf of the petitioner in this case, Zorik Keshishian. The Board of Immigration Appeals found that there were four issues of credibility that were crucial to this case. One, if you recall, that the only testimony that was provided was by the petitioner and by the petitioner's brother, Girayere. And the court found, and the BIA also found, discrepant testimony in the employees in the room at the time of the incident where the petitioner's brother was hit by a wrench. The second area of discrepancy was the duties of an employee of the company, Yamudi. The third was whether or not his brother lost consciousness. And the fourth was the discrepancy in the hospital where his brother received medical care. Seeing v. Ashcroft, this Court clearly held that minor inconsistencies or factual omissions that do not go to the heart of the asylum claim are insufficient to support an adverse credibility finding. But, counsel, would you agree that we've also held that if the event concerns the central basis of the persecution, that the details of that central basis of persecution are important to be consistent? I agree with that, Your Honor. And we don't believe that the discrepant testimony as far as the number of employees or who was present, the number of employees that were present at that time, rises to the level of being the heart of the asylum claim. Okay. How about whether or not he lost consciousness? Well, again, that was explained that we have to take into consideration that this was a 14-year-old who was helping his brother out during his summer break. And that can be subjective, whether or not some, I've been knocked down before in a football game, but I never lost consciousness, and others thought I did lose consciousness. But the I.J. was not required to accept the explanation. The I.J. received that explanation. But was the I.J. required to accept that explanation as explaining the discrepant testimony? No, but she was not required to accept that explanation, but she should have considered it as part of the reason why there would be discrepant testimony in that. Whether the brother says, I was not knocked out, I was not unconscious, and whether the petitioner thinks he was unconscious is a matter of subjective interpretation. But why would you think that the I.J. did not consider that? Explanation. Well, I believe that I.J. did not offer a cogent reason as to why she believed the discrepancy rose to the level of finding incredibility. On the point of unconsciousness, and that seemed like a relatively dramatic issue, doesn't the record establish that your client said that his brother was unconscious when he put him into the car? Wouldn't that be more than when maybe somebody with a football helmet on may or may not be seen to be unconscious, but this is a different factual scenario? I understand, and it was the petitioner that said he was, he believed his brother was unconscious, but whether or not his brother believed he was out or out cold or whether his brother may have been unconscious, but when he came to, never really realized that he was unconscious. There's times when people black out and never know that they have blacked out. Okay. But we're looking at this as whether or not substantial evidence supports the I.J. decision. So we have to be compelled to come to the opposite conclusion. And perhaps the I.J. could have gone the other way on this issue, and we would still probably say that the I.J.'s determination was supported by substantial evidence. If the evidence can go either way, and the I.J. selects one outcome as opposed to the other, how can we say that there is no substantial evidence in the record to support that determination? Well, I believe we have to go back to whether or not that was the heart of the petitioner's claim. Again, going back to the wrench incident, if I was, somebody came and hit me with a wrench right now, and you polled this audience at a later time, several years later, and asked them who was in the room at the time, I think you'd have discrepant testimony going all over the place. But in this case, the brothers, this was the event that supports the persecution claim. So it's a very important event in their lives. And if it's, if we are to believe that the I.J. believed that this rose to the level of persecution, then the details, the devil is in the details regarding how consistent the details are. Right. And there were many, many consistencies in the testimony between both brothers. And I believe those consistencies outweigh the inconsistencies that are listed here by the BIA and the I.J. The problem I'm having with your argument is that we don't sit here as the initial determiner of the facts. We don't sit here as the initial determiner of the facts. We don't get to weigh the facts. We only get to determine whether or not there is substantial evidence in the record to support the determination that was made by the fact finder. So what does that do to your argument? Well, Your Honor, again, my argument goes, these discrepancies were listed in detail by both the immigration judge and the Board of Immigration Appeals, and taking them into consideration in and of themselves, I, they don't go to the heart of the asylum claim. The fact of the matter remains that there was, the brother was hit by a wrench, and the brother suffered injuries. The brother was taken to the hospital. Which hospital? Well, that, again, that was a discrepant fact, but the petitioner was not a percipient witness as to what hospital the brother went to. He did not go to the hospital. The petitioner's father took the brother to the hospital. But he testified specifically about a hospital. Which hospital? Both of them testified he was taken to a hospital. They just said different hospitals. Right. So now that, unlike the unconsciousness, which if we accepted your suggestion that sometimes someone may be unconscious or appear and not be, this is pretty much an objective fact, the name of a hospital. If it's hospital A versus hospital B, there's no question they're two separate hospitals. And this is just one more item that was inconsistent. And how about the job description of the one witness that both parties acknowledged was there? I'm not sure. Umadi. Umadi. Well, completely different versions of what his duties were. Well, again, the petitioner, 14-year-old, he's there on summer break. He's not engaged in this work as his brother is. And for him to know the job duties of every single employee there in comparison with his brother, I don't think the court could expect someone of that age and the nature of why he was there helping his brother out to know the ins and outs of that particular business. Or he could have just said, I'm not sure. So I was wondering if you might want to save, you know, a minute and a half or so for rebuttal. Thank you, Your Honor. Your perspective on what the government argues. Thank you, Your Honor. And I'd also like to bring up that the petitioner is a candidate for prosecutorial discretion, and we've made a motion to mediate on that behalf. All right. We'll probe the government on how amenable the government is to that idea. Thank you, Your Honor. Thank you. Good morning again, Your Honors. Good morning. So is the government amenable to sending this case to mediation to explore the exercise of prosecutorial discretion? The preliminary indication is that DHS would not positively exercise its discretion in this case, but should petitioner seek to pursue the request, then the respondent is not opposed to placing the case in mediation. All right. So in practical terms, there's a motion pending for the case to go to mediation. So can I take your representation to mean there is no opposition to the motion? That's correct. All right. Thank you. Would you like me to proceed on the merits? Please. Sure. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Do you have a case that says the adverse credibility determination that's made in conjunction with determining the merits of the asylum carries over to the untimeliness of the asylum application? I'm just curious as to whether or not there's a case you made that representation. And I was just curious if there's a case that says that finitely. I'm not familiar with a case which says exactly that point. But the credibility determination, it could be credibility with respect to a particular portion of a claim. But generally speaking, when an immigration judge makes a credibility determination, they're determining the credibility of the witness. And if the immigration judge determines that the witness is not providing credible testimony, unless the immigration judge states that the credibility determination is with respect to one portion or the other of the testimony, then the credibility determination is with respect to all of the testimony of the applicant. Well, that's not necessarily true, because a CAT claim is considered separate and apart. The adverse credibility determination is not determinative of the CAT claim. That's correct. So that's why I'm asking you, does the adverse credibility determination carry over to the untimeliness? Because the CAT claim is analyzed separately and apart from the adverse credibility determination. I'm asking you, does a similar analysis apply when we're looking at the untimeliness application? With respect to the Convention Against Torture, the immigration judge has to look at things like country conditions evidence to determine whether there is a probability of torture in the country. And so there may be objective evidence in the record unrelated to testimony credible or incredible by the applicant, which could render him or her eligible for protection under the Convention Against Torture. And that's what this Court said in Camalthus, that the IJ has to engage in a separate determination under the Convention Against Torture. Well, there's a separate analysis, too, for the untimeliness of the application. And we make a determination whether or not the facts are disputed or undisputed. So it's a little bit different, and the IJ treated it a little bit differently and analyzed it separately. So that's why there is a little uncertainty in my mind regarding whether or not the adverse credibility determination that was made in the merits of the asylum application carries over. And I was just curious if you knew of a case that resolved that particular point. Sure. Well, Your Honor, there was an alternative argument made in Respondent's Brief that even if this Court does have the timeliness determinations supported by the record, where there were affidavits and the testimony of Petitioner, an individual who claimed to be his brother, but that the adverse credibility was not overcome by such evidence. And that's the alternative argument presented in Respondent's Brief. All right. Thank you, counsel. Any other questions from the panel? None here. Thank you. All right. Thank you, counsel. Thank you very much, Your Honors. We'll hear a rebuttal. Thank you, Your Honors. I'd just like to use my time to address the one-year issue as well. The ‑‑ like Your Honor said, there is no case law that I'm aware of that says that adverse credibility finding carries over to the one-year issue. What did the judge say about that, when he decided that it was a one-year issue? It's not shown by clear and convincing evidence that it was brought within a year. What did he say on the record? I believe the judge found that there was no documentary evidence that was supporting the Petitioner's ‑‑ What did he say about the credibility of the ‑‑ I don't think he made any ‑‑ she made any determination about the credibility. She certainly did make an explicit adverse credibility determination in that. She did, but she ‑‑ She did not in the timeliness, when she was talking about the timeliness issue, she did not make an explicit adverse credibility determination, which raised the question in my mind as to whether or not the subsequent explicit adverse credibility determination related back to this part, because she said there's some skepticism about the testimony. But under our case authority, that's not enough. Right. And in going further, she did not offer any articulative basis to question the Petitioner's credibility or offer any specific or cogent reasons for her stated disbelief. Well, she said she would discuss it later, in her opinion. I was wondering if that was enough to tie them in together. But that's neither here nor there. So did you want to make any other statements about the merits of the asylum claim? Your Honor, basically, it, again, goes back to the point both the differences between the brother and both brothers' testimony is it can be very subjective, like Judge Gould brought up, that that kind of traumatic experience can alter somebody's memory, especially getting hit by a wrench in your head. And, you know, basically getting taken to a hospital, and you might not remember, you might remember some facts, you might not remember others. So we can't hold those discrepancies, do not go to the heart of the matter, which was he was struck by the wrench, and he did receive medical treatment for that. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court. The last three cases on calendar, BGI, Light v. American General, the last two cases, and Rees v. Colvin have been submitted on the briefs.
judges: Huck, Gould, Rawlinson